## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BRYANT COLLINS. | ) |
| | ) |
| Plaintiff/Appellant | ) |
| | ) No. 05 C 2894 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| COMDISCO INC. | ) |
| | ) |
| Defendant/Appellee | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before this Court on Appellant Bryant Collins' ("Appellant") appeal from the United States Bankruptcy Court, who granted summary judgment in favor of Appellee Comdisco Inc. ("Appellee").

Appellant was an at-will employee of Appellee in Texas. Appellant's compensation consisted of a base salary and a commission. During the relevant periods, Appellant was paid in full for his salary. As to his commission, Appellant claimed that he was owed $1,111,066 for fiscal year 1999, and $823,918 for fiscal year 2000.

In fiscal year 1999, Appellee and its sales representatives encountered problems in terms of reconciling and timely paying commissions to sales representatives. On or about December 17, 1999, Appellant reviewed and signed a "Fiscal 1999 Commissions Resolution (the "Resolution"). The Resolution incorporated the terms of a Memorandum from Thomas Flohr.

This resolution provided, in part, that if Appellant were to accept the sum of $926,311 from Appellee, this payment would act as "final payment for all remaining amounts to which [Appellant] may be entitled under the Fiscal 1999 Comdisco Sales Plan." Appellant reviewed the Memorandum from Thomas Flohr. Under the specific terms of the Resolution, Appellee paid the sum of $926,311 and Appellant received and accepted this payment in January of 2000.

On July 31, 2000, Appellant signed an offer letter, which provided, in part, that Appellant would continue to be eligible for the Fiscal 2000 Incentive Compensation Plan. The FY 2000 IT District Manager Compensation Plan incorporated all of the general terms and conditions contained in the FY 2000 Sales Compensation Plan. Participation in the FY 2000 Incentive Compensation Plan, and later the FY 2001 Incentive Plan, was contingent upon the participant's agreement that all forms of incentive compensation to which he may be entitled under any prior Comdisco incentive plan had been paid in full.

Appellant claims that despite the Resolution, and FY 2000 and FY 2001 Sales Plans, he is still entitled to full commission, as originally decided prior to the Resolution. Appellant claims that the Resolution was not a valid contract, and further he signed it under economic duress. He claims that oral representations were made to him that suggested he Resolution payment was not final. Appellant has refused to return the $916,311 in order to pursue a claim for rescission of the release.

In May 2001, Appellant filed a lawsuit against Comdisco accusing his employer of engaging in fraud, breach of contract and breach of the duty of good faith and fair dealings. On July 2, 2001, Appellant voluntarily resigned. On November 24, 2001, Appellant filed a Proof of Claim in the bankruptcy proceedings. Appellant claimed damages in the approximate amount of

$2,252,000, which represented unpaid wages and commissions. On or about November 28, 2004, Appellant filed a second Proof of Claim, claiming approximately $1,700,000 of damages, designated as Claim No. 1999. Claim No. 1999 was the claim at issue in the bankruptcy proceedings. On March 24, 2005 the Bankruptcy court granted summary judgment to Appellee. Appellant now asks the court to review the decision.

**Legal Standard**

On appeal in district court, a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004). As a conclusion of law, a grant of summary judgment by the bankruptcy court is therefore reviewed de novo. *Id.* A grant of summary judgment will be affirmed if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). Summary judgment may be affirmed on any ground supported by the record, even if it was not relied upon by the court below. *Id.*; *Johnson v. Gudmundsson*, 35 F.3d 1104 (7th Cir. 1994).

**Analysis**

**I. 7056-1 Statements and Responses**

Appellant challenges the Bankruptcy court's finding that Appellant's response to Appellee's 7056-1 statement did not follow the Rules, did not cite to the record and was not supported by the record. Appellant's response to Appellee's 7056-1 statement did not follow the proper format in answering whether Appellant denied or admitted to the statements of fact.

Although Appellant's response did cite to the record for the most part, there are several instances when Appellant's response was not supported by the record. For example, see Appellant's response to paragraphs 12, 42, 48, 49, 50 and 52. The question before this court is whether there was clear error in the Bankruptcy court's conclusion. Given the above record, this court does not find clear error.

Appellant challenges the Bankruptcy Court's holding that Appellee's 7056-1 statement did conform to the Rules. This court finds no clear error in this conclusion.

Appellant challenges the Bankruptcy Court's finding that paragraph 12, 13, 14, and 15 to Appellant's 7056-1 statement have not been established. These paragraphs involve the calculation of Appellant's commission, Appellant's engagement in cross selling, Dixon's payment for the cross sales, and that Appellee's Fiscal 2000 IT CAP Sales Plan did not pertain to Appellant. None of these paragraphs indicated where these alleged facts may be established. They are merely sentences that stand alone, without citation to any depositions, documents or other factual foundations in the record. This court concludes that there was no clear error in the Bankruptcy Court's finding that Paragraphs 12, 13, 14, and 15 to Appellant's 7056-1 were not established.

In searching through the bankruptcy docket sheet, this court finds no response by Appellant to Appellee's statement of additional facts. This court finds no clear error in the Bankruptcy court's holding that Appellant did not response to Appellee's additional facts.

Appellant asks this court to review the Bankruptcy Court's denial of Appellant's motion to strike the affidavit of John M. Vandemoore. Appellant argues that Vandemoore did not have personal knowledge, and answered questions with "to the best of my knowledge," or "it is my

understanding." Vandemoore was the Division Controller for the IT CAP Division at Comdisco from October 1999 through September 1, 2001, and then became the Vice President and Division Controller. He stated that he was "fully familiar with the Commission Plans for the IT CAP Division at Comdisco and how the Plans applied to Mr. Collins and his request for payment of additional commissions." He had reviewed the relevant business documents and records produced by Appellant. He was fully familiar with the facts surround Appellant's commission payment. The fact that he may have used the phrase, "to the best of my knowledge" does not mean he had no personal knowledge of the relevant facts. This court agrees with the Bankruptcy court's denial of Appellant's motion to strike.

Appellant asks this court to review the Bankruptcy Court's denial of Appellant's motion to strike the affidavit of Mary Maciejewski for lack of personal knowledge. Maciejewski was a commissions administrator at Comdisco for approximately nine years, and oversaw the commission payments for the IT CAP Group. For the Fiscal Years of 1999, 2000 and 2001, she worked as commissions administrator for the Sales Group wherein Appellant worked. She states that she was fully familiar with the applicable commission plans for the IT CAP Division at Comdisco and how these plans applied to Appellant when he was a sales representative and as a district manager. Again, the fact that she may have used the phrase, "to the best of my knowledge" does not prove she had no personal knowledge of the relevant facts. This court affirms.

### II. Fiscal 1999 Commission Resolution

Appellant asserts that the Fiscal 1999 Commission Resolution was not a valid, legal contract and therefore is unenforceable. A valid contract requires that both parties are competent

to enter into the proposed stipulations. *Louisville & N. R. Co. v. Kentucky*, 161 U.S. 677, 691 (U.S. 1896). There must be a meeting of minds as to the material terms of the contract. *Id.*; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (U.S. 1967).

Appellant argues that the Fiscal 1999 Commission Resolution ("Resolution") agreement did not involve a meeting of the minds, because Appellant was not subject to the FY99 Comdisco Sales Plan, and thus did not believe he was releasing his compensation claims by signing the Resolution. Appellant's argument is unpersuasive, because in the Resolution itself, Appellant clearly acknowledged that he was a participant of the Fiscal 1999 Comdisco Sales Plan. Appellant signed the following: "Under the Fiscal 1999 Comdisco Sales Plan, in which I was a participant..." The Resolution states that the special payment amount of $926,311 was a final payment. Further, regardless of what the Appellant believed about the Resolution, he later elected to receive compensation under the FY2000 and FY2001 Commission Plans, which contained a "participation and eligibility" clause stating in pertinent part:

> [Receiving] incentive compensation under this plan is contingent upon his/her agreement that all forms of incentive compensation to which he/she may be entitled under any prior Comdisco incentive plan have been paid in full by Comdisco.

FY2000 Sales Compensation Plan, IX. A. The language is clear and unambiguous that by electing to receive the incentive compensations under the FY2000 and FY2001 Sales Plans, Appellant agreed that all previous commission payments were paid in full. Appellant is well-educated, had an opportunity to review the Resolution and the FY2000 and FY2001 Plans, and wanted to negotiate terms for the Resolution. Appellant was informed and understood what he was doing. There is no question of material fact that Appellant acknowledged that his FY1999

compensation payments had been paid in full, and released any claim on further compensation for FY1999.

Appellant argues that oral representations were made to him that override the written compensation. Appellant claims that Dixon represented to him that he should be paid all his commission, that he may be able to take the Resolution money and continue in the reconciliation process, and that he may be eligible for medical commissions in FY2000. However, Appellant has no written evidence of these claims. Given the parole evidence rule, these oral representations are not valid against a clear contract. The Resolution stated that Appellant "accept[s] this amount from Comdisco as final payment for all remaining amounts to which [he] may be entitled under the Fiscal 1999 Comdisco Sales Plan." The memorandum from Flohr accompanying the Resolution states

> Your receipt of this payment is contingent on your executing and returning the attached agreement confirming your acceptance of this amount (together with other amounts previously paid to you) as a full and final payment of all amounts to which you may be entitled under the FY99 Plan. If you are not in agreement with the amount being offered to you, then Comdisco will continue with the reconciliation process on any open items you may have...

This language is clear and unambiguous that the money paid under the Resolution represented the full and final payment of FY99 commission, and would take the place of the reconciliation process. It is clear from this paragraph that the Resolution is an alternative to the reconciliation process, not an addition to it. Oral representations do not override this clear, written language of the Resolution.

If Appellant had misunderstood the Resolution, he could have later returned the money and rescinded the contract. *Fleming v. United States Postal Serv. AMF O'Hare*, 27 F.3d 259 (7th

Cir. 1994). The Bankruptcy court noted, and this court agrees, that by keeping the money offered in the Resolution, Appellant ratified the agreement, and is bound by its terms. Appellant argues that Appellee never asked for return of the money. The Appellee, having signed and executed the Resolution with no intention to rescind, had not reason to ask for the money back.

Appellant also argues that the Resolution was not supported by consideration, because he was already entitled to the money. The consideration was the expedited payment of the commission, before the conclusion of the reconciliation process, for a lesser amount. See *Koules v. Euro-American Arbitrage*, 293 Ill. App. 3d 823, 831 (Ill. App. Ct. 1998). The Resolution and the accompanying memorandum from Thomas Flohr were clear and unambiguous. The Resolution agreement was a valid, legal contract, where Appellee's memorandum and release being tendered were an offer, and Appellant's signature and receipt of the money were acceptance. Even if the Resolution lacked consideration, the "participation and eligibility" clause in the FY2000 Commission Plan prohibits Appellant's claim for FY1999 compensation.

### III. Economic Duress

Appellant asserts that he was under economic duress when he signed the Resolution because he was told that if he did not sign, he would be fired. The basic elements of economic duress are: (1) the party alleging economic duress must show that he has been the victim of a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of his unfettered free will. As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values or to give up something for nothing. If the payment or exchange is made with the hope of obtaining a gain, there is not duress; it must be made solely for the purpose of protecting the victim's business or property interests. Finally,

the party threatened must have no adequate legal remedy. *JPM, Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270 (7th Cir. 1996). A threat to do what the person making the threat has the legal right to do does not constitute duress; nor does driving a hard bargain or taking advantage of another's financial difficulty. *S+L+H S.p.A. v. Miller-St. Nazianz, Inc*., 988 F.2d 1518 (7th Cir. 1993). Under Illinois law, it may be possible for a threat to terminate to constitute moral duress, even for an at-will employee. *Golden v. McDermott, Will & Emery*, 299 Ill. App. 3d 982 (Ill. App. Ct. 1998). Moral duress "consists in imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another. Relief is granted in such cases on the basis that the party benefitting thereby has received money, property, or other advantage which in equity and good conscience he should not be permitted to retain." *Id*. The party claiming duress has the burden to provide clear and convincing proof. The Bankruptcy court found that Appellant lacked probative evidence to support his claim of economic duress. This court agrees.

Appellant relies on the deposition of Lynn Dixon to support his claim of economic duress. Specifically, Dixon acknowledged that Appellant expressed that he was under "duress" in 1999, and that the threat to fire him was contingent on his signing of the Resolution. In reference to the expression of "duress," Dixon said,

> I think that we all were under some duress because we had expected to get paid on November 14th, and we didn't get paid. And you know, if you're used to being paid on November 15th, you have bills that come due, you have, you know, things that you're trying to budget around. So I–I think there was some of that that was going on, not just only with Bryant, but with the sales force, as well.

Deposition of Lynn Dixon at 143. The duress referred to here is not regarding a threat of termination, but rather the stresses of delayed payment. This unfortunate situation is the reason

for the Resolution. Although Appellant may have felt financial stress from the situation, Dixon's deposition does not provide probative evidence that Appellant felt duress due to the threat of being fired.

Secondly, Appellant refers to Dixon's Deposition in claiming that there was a threat from Thomas Flohr to fire him if he did not sign the Resolution. In Dixon's Deposition, she goes into detail about the reasons why Flohr was considering firing Appellant, and stated that she did not have knowledge of Flohr ever firing an employee for not signing a reconciliation offer. This court agrees with the Bankruptcy court that this does not constitute probative evidence for economic duress.

### IV. Texas State Claim

The Bankruptcy court found that all causes of action asserted in Appellant's Texas State claim are refuted and rejected. Appellant claims that he deserves recovery under the theory of Quantum Meruit or other quasi-contractual relief, because no express contract was formed. Under Illinois law, quantum Merit requires that no contract exist to proscribe payment for the service at issue. *Installco Incorporated v. Whiting Corporation*, 784 N.E.2d 312, 271 Ill. Dec. 94 (1st Dist. 2002). As discussed above, the Resolution agreement was a valid contract, and bars a quantum merit claim. Further, because the contract was entered into by two informed and intelligent parties, this court finds no fraud or breach of the duty of good faith and fair dealing. Appellant entered into a valid contract for the final payment of his FY99 commission compensation, and is bound by the terms of the contract. All causes of action Appellant asserted in his Texas State claim are rejected.

**Conclusion**

The judgment of the Bankruptcy court is affirmed.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 26, 2007**